Brittney R. Dobbins, SBN 299768
Brittney@bdobbinsesq.com
**DOBBINS LAW**
9465 Wilshire Boulevard Suite 300, PMB #3140
Beverly Hills, CA 90212
Telephone: 770-727-3474

Attorneys for Plaintiff
DARRIN HENSON

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DARRIN HENSON**, an individual,<br><br>     Plaintiffs,<br><br>**v.**<br><br>**SONY MUSIC ENTERTAINMENT, RICHMOND STREET PRODUCTIONS, LLC, EPIC GAMES, INC., LANCE BASS**, an individual, **NICHOLAS PAULEY**, an individual, and **DOES 1 through 10**, inclusive,<br><br>     Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES:**<br><br>  **(1) COPYRIGHT INFRINGEMENT**<br>  **(2) VICARIOUS COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This is an action by DARRIN HENSON, an individual, seeking a declaration of his exclusive ownership interest in and to the creative work that he created in 1999, and that subsequently became associated with the musical work entitled "Bye, Bye, Bye" by the recording artists professionally known collectively as NSYNC (hereafter "Bye, Bye, Bye, Dance" or "Work"); to recover damages arising from the infringement of his Copyright in and to the Work by Defendants SONY MUSIC ENTERTAINMENT, RICHMOND STREET PRODUCTIONS, LLC, EPIC GAMES, INC., LANCE BASS, NICHOLAS PAULEY, and DOES 1-10 (whose names have not yet been determined); and to enjoin Defendants from future infringement. Defendants used,

reproduced, distributed, and publicly displayed, through unauthorized licensing, and then via film, video-game application, and various public performances, Henson's copywritten Work.

### THE PARTIES

2.    Plaintiff, Darrin Henson (hereafter "Plaintiff" or "Henson"), is a resident of the state of Georgia and the creator of the Work, a multinational hit dance that Henson authorized NSYNC to use for non-monetary advertising and promotional purposes in relationship to the musical work "Bye, Bye, Bye," a musical work that was first performed by NSYNC with the Work on October 28, 1999, at the first ever Radio Music Awards in Las Vegas, Nevada, which was pre-recorded and then distributed and aired "live" on the WB, and its then local affiliate networks.

3.    Sony Music Entertainment (SME) is a Delaware general partnership with its principal place of business at 25 Madison Avenue, New York, New York 10010-8601. SME does business in California at 10202 W. Washington Blvd., Akio Morita Bldg., 6th Floor, Culver City, California 90232, Los Angeles County, California. On information and belief, SME was originally formed in 2004 under the name BeSo, and later that year became Sony BMG Music Entertainment, which was a joint venture between Sony Corporation of America and Bertelsmann AG from about March 2004 until about October 2008, and the same was renamed SME, effective December 31, 2008. On information and belief SME gained ownership of the Zomba Group (the original owner of the promotional video created for the musical work "Bye, Bye, Bye") around this time, when Sony Corporation of America purchased Bertelsmann's 50 percent (%) stake in the joint venture. Bertelsmann purchased the Zomba Group in 2002. This acquisition resulted in SME owning the rights in and to the musical work "Bye, Bye, Bye," and its related promotional video.

4.    Richmond Street Productions, Inc. (hereafter "RSP") on information and belief, is a California limited liability company created by Marvel Studios, LLC, with its principal place of business at 500 South Buena Vista Street, Burbank, California 91521, Los Angeles County, California. On information and belief SME gave RSP a non-exclusive license to reproduce the chorus of the Work as an interrupted dance in the main title/opening sequence of "Deadpool & Wolverine," to exhibit and distribute the same within the film, and to use the same as advertising

and promotional material for the film. RSP made such use of the Work in the film, the film was distributed by Walt Disney Studios Motion Pictures, and the film was promoted by way of various public performances by Defendant Nicholas Pauley.

5.     Epic Games, Inc. is a Maryland corporation with its principal place of business at 620 Crossroads Blvd., Cary, North Carolina 27518. Epic Games is registered to do business in California, and on information and belief it does business in Los Angeles County California. On information and belief SME gave Epic Games a non-exclusive right to use the Work (in its entirety) as an "emote" an in-game character animation, dance, gesture, action or other movement, in its video game "Fortnite," for a limited term, and to license the same to third parties for purposes of distribution, sale, license, and or promotion of Fortnite. Epic Games made such use of the Work and profited from the sale of the related emote.

6.     On information and belief Lance Bass, a member of NSYNC, is a resident of and does business in Los Angeles County, California. On information and belief in May of 2024 Bass partnered with Marriott to host an interactive fan experience wherein he taught the Work, without a valid license to exploit the Work for profit. On information and belief Bass exploited the Work at the fan experience and profited from the instruction of the Work.

7.     On information and belief Nicholas Pauley, a dancer and choreographer, was hired by RSP to perform the Work in "Deadpool & Wolverine" and for the promotional activities related to the film. Pauley has subsequently performed the Work at various workshops and public appearances for which he was paid to attend, without a license to make such use of the Work for profit.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

8.     Defendant Does 1 through 7, inclusive, are sued herein under fictitious names. Their true names and or capacities are unknown to Plaintiff. For example, Plaintiff knows that John Likens sold the idea of doing the Work in "Deadpool and Wolverine" to Ryan Reynolds, he knows that Disney distributed "Deadpool & Wolverine," and he knowns that the Defendants, including but not limited to SME, have entered into other licenses that infringe his Work – Plaintiff either cannot lawfully disclose this information at this time, does not yet know exactly what harm their acts have caused him directly, and or does not yet know the role of each in the specific harm asserted herein.   Therefore, when things like true names and capacities are ascertained, Plaintiff will amend this complaint by inserting the same herein.



johnnylikens One thing I never thought I would find myself doing in my career would be learning the dance moves to NSYNC's Bye Bye Bye to try and sell the idea of a Dancing Deadpool to @vancityreynolds and @slevydirect for their opening title sequence... but here we are.

Behold, a never before seen, very rare behind the scenes clip of me in the motion capture suit learning the moves... and the motion test footage that I pitched to the filmmakers to showcase how funny it could be to intercut the idea into the sequence.

Director Shawn Levy was later quoted in an interview with @collider saying : "this concept changed the entire DNA of the opening sequence" - "You never know where a great idea is gonna come from."

It's been WILD to see this little idea come to life and entertain fans on screens all over the world. 🤩

#deadpoolandwolverine #deadpool #dancepool #nsync #byebyebye #mocap #maximumeffort
96w

9.     On information and belief at all times material herein each of the Defendants was the agent and or employee of some or all of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and or employment making their acts and or omissions attributable to the Defendant that employed them pursuant to the legal doctrine of vicarious liability.

10.     SME and some or all of the other Defendants had a licensor licensee relationship. The Defendants that obtained a license from SME, used the Work with SME's authorization. Each time a Defendant made use of the Work pursuant to a license from SME, Henson's copyright was infringed, and more than one party was responsible: the licensee that used the Work and SME (who authorized the use). Since SME and the licensing Defendants are at fault together for the licensed uses, they are liable for any damage such use caused, jointly and severely. Accordingly, to avoid inconsistent rulings and preclusion, all tortfeasors are sued collectively herein. (*See Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 329 (4th Cir. 2007).)

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

11.     The Defendants that obtained a license to use the Work from SME, do not have an affirmative defense against Henson's claims of copyright infringement because they licensed the Work pursuant to only copyright registrations for the promotional video that was created and used to advertise and promote the musical work "Bye, Bye, Bye."  Those copyrights (PA0001067486 and PA0001280808) are motion picture copyrights that do not protect the underlying elements used therein, such as the musical work "Bye, Bye, Bye" and or the Work. These registrations do not contain any disclaimers for any pre-existing copywritten or copyrightable work, do not assert any claim to creative work contained therein, and do not assert that any of the work therein was a "work made for hire." Accordingly, all or most of the licensing Defendants obtained a separate license from SME for the use of the underlying musical work. None of the Defendants obtained a license from Henson to use the underlying Work.

12.     The Defendants action(s) of entering into licensor licensee relationships with SME and or entering into contracts with SME that are supported by valuable consideration, for the ability to make "authorized" use of the Work for profit, concede the fact that the Work is an original copyrightable subject matter, and foreclose any bad faith arguments to the contrary that are employed merely to avoid lability to Henson for infringement.

13.     The Copyright Act of 1976 ("Copyright Act" or "Act") provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). The only exception to this is a work made for hire. The Act defines a work-for-hire as "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, **if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire**." Id. at § 101. SME has had roughly two (2) years, since receiving notice of infringement from Henson in 2024, to locate its predecessor in interests' written work made for hire agreement, and or other

written transfer of interest in the Work from Henson to Zomba or SME, it cannot find any such document.

## JURISDICTION AND VENUE

14. This action is brought, and this Court has subject matter jurisdiction, pursuant to 17 U.S.C. sections 101, *et seq.*, and 28 U.S.C. Sections 1331, 1338 and 2201.

15. The Court has personal jurisdiction over the defendants. As alleged within paragraphs two (2) through 13 (incorporated herein) all defendants either reside in Los Angeles California and or solicit, transact, and or are doing business within Los Angeles, California; and have committed unlawful and tortious acts both within and outside California, causing injury in California. Plaintiff's claims arise out of the conduct that gives rise to personal jurisdiction over Defendants.

16. Venue lies within this Court pursuant to 28 U.S.C. Sections 1391(b)(1), (b)(3), (c)(2), (d) and 1400(a).

## FACTS COMMON TO ALL CLAIMS

## HENSON'S OWNERSHIP

17. Henson was hired to create the Work for NSYNC's first ever live performance of the musical work entitled "Bye, Bye, Bye," in October of 1999, during a period where the band was engaged in highly public litigation with its manager and creator, Lou Pearlman.

18. Henson received a call from NSYNC's then day-to-day manager, Johnny Wright, to choreograph the Work for the band's first promotional performance of the unreleased musical work entitled "Bye, Bye, Bye," at the first ever Radio Music Awards in Las Vegas, Nevada.

19. Henson subsequently flew to Las Vegas to choreograph the Work.

20. Henson spent about one (1) hour in a hotel room alone with a speaker, listening to "Bye, Bye, Bye," and creating the Work.

21. Henson did not sign a work made for hire agreement prior to the creation of the Work, and as such by its creation alone, pursuant to17 U.S.C. § 201(a), he became the sole owner of the Work.

22.    Henson subsequently taught the unmodified Work to NSYNC, who performed the unmodified dance live the very same day, October 28, 1999. That performance was pre-recorded, edited, and then distributed and aired "live" on the WB, and its affiliate networks, the same day.

23.    A true and correct copy of the Radio Music Awards performance can be viewed at the following link, at 1:43/3:51, the video was last accessed on June 25, 2026: https://youtu.be/k_nK1voGI5Y?si=6QJxl0L29Hj8gYYT.

24.    NSYNC subsequently performed the Work live on multiple occasions, in 1999, including but not limited to, during its promotional appearance on the Rosie O'Donald Show and during the groups' promotional "NSYNC in Concert/Second II None Tour." True and correct copies of these performances can be viewed at the following links, the video was last accessed on June 25, 2026:

https://youtu.be/a48a0CQjbT4?si=19FTSeAwc2mCV0Ne;

https://youtu.be/a48a0CQjbT4?si=19FTSeAwc2mCV0Ne.

25.    The promotional video for "Bye, Bye, Bye" was made during the period between January 9, 2000 and January 11, 2000, and released on January 21, 2000.

26.    Zomba obtained copyright registration for the promotional video, on December 10, 2001, for a publication date of January 21, 2000, the registration was for a motion picture, and it did not disclaim any existing work, or indicate that any work was made pursuant to a work made for hire agreement (PA0001067486).

27.    Zomba obtained a second registration for the promotional video on March 23, 2006, for the same publication date, and it too did not disclaim any existing work therein or indicate that any work was made pursuant to a work made for hire agreement (PA0001280808).

28.    According to the United States Copyright Office Circular 45 a copyright on a motion picture protects only the expression fixed in the motion picture, such as the camera work, dialogue, sounds, etc., it does not cover the underlying idea or concept behind a work or any characters portrayed in it.

29.    Therefore, the motion picture registrations do not provide Zomba or SME with

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

registered ownership of the underlying Work, nor do they provide any actual notice to Henson of any conflicting ownership claim in and to the underlying Work.

30.     Henson has not signed any written transfer of interest in and to the Work to any third party, to date.

31.     Until 2024, Henson was wholly unaware of any use of the Work for profit by anyone other than himself.

32.      The same year Zomba obtained registration for the promotional video, Plaintiff was creating and releasing Darrin's Dance Grooves, a first of its kind aerobics style dance instructional video (VHS) that sold over three (3) million copies, earning Plaintiff millions, and making it one of the most successful dance videos, **of all time**.

33.     Relatedly, Plaintiff has been publicly holding himself out as the sole owner of the Work throughout the years in various public interviews and during live workshops (wherein he taught the dance) completely unchallenged, including but not limited to within his documentary "Darrin's Dance Grooves: The Untold Darrin Henson Story" that premiered on ALLBLK, on *April 20, 2023*.

34.     Based on the facts contained within paragraphs 19-33 (incorporated herein by reference) Henson obtained copyright registration for the Work on *November 19, 2025*.

35.     In relevant part, Henson's copyright in and to the Work covers the visual elements created for the chorus of the musical work "Bye, Bye, Bye."

36.     Henson obtained registration of this work more than five years after publication. Therefore, Henson is not entitled to a presumption of validity as to the facts stated in the certificate.

37.     Additionally, Henson obtained copyright registration after the infringement commenced, therefore he is foreclosed from seeking statutory damages and attorneys' fees under the Copyright Act. (*See* 17 U.S.C. § 412(2).)

38.     Henson may however seek to recover his attorneys' fees and costs related to this action as a sanction against Defendants for bad faith and or fraud.

39.     SME has not filed for or obtained registration in and to the Work.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

40. Henson is the only person with a copyright registration in and to the Work.

41. SME is not the author or creator of the work, they do not have a signed written work for hire agreement, they do not have a signed and written transfer of interest in and to the Work from Henson.

42. SME does not have standing to assert ownership of the Work.

43. None of the Defendants possess any licenses to use the Work.

**UNAUTHROIZED USES**

44. In 2024, SME entered into two licensing agreements for the use of the Work in exchange for at minimum, a licensing fee.

45. SME entered into a licensing agreement with Defendant Richmond Street Production, LLC, for the interrupted use of the chorus of the Work, in the main title of the motion picture "Deadpool & Wolverine."

46. Defendant Richmond made such commercial use of the work in the main title of "Deadpool & Wolverine." A true and correct copy of title scene can be viewed at the link below, the chorus of the Work appears at 1:05/3:18-1:10/3:18, 1:41/3:18-1:48/3:18, and 1:56/3:18-2:01/3:18, last accessed on 6/25/2026:

https://youtu.be/43RDe_hJYk?si=SwpI1bRfJoP12OGf.

47. The excerpt of the Work used in the main title is the chorus of the Work, and it appears interrupted, but unchanged and or unmodified.

48. The chorus of the Work is not being commented on, ridiculed, criticized, critiqued, or mocked by the character performing it during the main title of "Deadpool & Wolverine." The "Deadpool & Wolverine" main title does not make any point about the Work itself.

49. Fans received the use of the Work as a farewell to the 20th Century Fox Marvel Universe (The Stories Behind Deadpool & Wolverine's 'Bye Bye Bye' Iconic Opening - FandomFevers, last accessed on 6/25/2026.) Which is the same message the Work was created to convey when it was used to promote the musical work "Bye, Bye, Bye." When "Bye, Bye, Bye," was released it was received by fans as a farewell to the group's manager Lou Pearlman and their

record label RCA Records.

50.     The use of the Work referenced in paragraphs 45-49 (incorporated herein by reference) functioned as a substitute for the Work. Fans have renamed the Work (in its entirety) as the "Deadpool Dance" or "Dancepool" and the choreographer that performed the Work, Defendant Nicholas Pauley, in "Deadpool & Wolverine" is being hired to perform and teach the Work (in its entirety) in Henson's stead. (*See* https://youtu.be/ADtypGTyYMw?si=QRRlyp5x7Ysu2Puf, last accessed on 6/25/2026.)

51.     "Deadpool & Wolverine" earned $1.338 billion globally at the worldwide box office.

52.     In 2024, SME also entered into a licensing agreement with Defendant Epic Games, Inc. for the use of the Work as an "emote," for purchase, in the video game "Fortnite."

53.     Epic Games made such commercial use of the work for profit. A true and correct copy of the "emote" can be viewed at the link below, last accessed on 6/25/2026: Bye Bye Bye - Fortnite Emote - Fortnite.GG.

54.     The excerpt of the Work used in the "emote" is the chorus of the Work, and it appears uninterrupted, unchanged, and unmodified.

55.     Defendant Nicholas Pauley received several paid opportunities to perform and or teach the Work, worldwide, following the release of "Deadpool & Wolverine," including but not limited to, Comic Con.

56.     The use Defendant Nicholas Pauley made of the Work as referenced in paragraph 55, and incorporated herein by reference, is both direct and vicarious. Pauley was employed by Defendant Richmond Street Production to perform the Work in "Deadpool & Wolverine" and to likewise promote the same, acts for which Richmond Street Production can be held vicariously liable. On information and belief Defendant Pauley also made the same promotional use of the Work independent and or outside the scope of his employment with Richmond Street Production, and solely for his own personal gain and or specifically to advance his own career as a choreographer and dancer, acts for which he can be held independently liable.

---

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

57.    Defendant Lance Bass partnered with the Marriott Bonvoy, for an appearance fee or other valuable consideration, for a "dance experience," at Heart WeHo in West Hollywood, California, on July 26, 2024. At this experience, Bass taught fans the Work.

58.    In 2026, Henson learned for the first time that SME licensed the Work for profit on at least two other occasions prior to the uses described in paragraphs 44-57 (and incorporated herein by reference). Henson cannot lawfully disclose that information at this time but will amend to add these individuals and their acts of infringement by amendment, after discovery.

59.    Plaintiff is not currently aware of any other uses of the Work for profit.

## NOTICE

60.    Henson discovered the use of the Work in "Deadpool & Wolverine" on or around when the film was released, July 26, 2024.

61.    In August of 2024, Henson sent demand letters to all then known or believed related licensees of SME: Marvel Studios, Disney, and Epic Games.

62.    In response to the demand, SME requested time to find work for hire paperwork. They have been unsuccessful and SME and Henson have been unable to reach an amicable resolution, necessitating the instant action against all known tortfeasors.

## FIRST CAUSE OF ACTION

(Copyright Infringement – 17 U.S.C. § 501)

Against all Defendants

63.    Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1-62, inclusive.

64.    At all times relevant herein, Plaintiff has been the exclusive owner of the Work, that has been licensed and then reproduced, distributed, and publicly displayed by Defendants through various means, including but not limited to film, video game and public performance.

65.    Plaintiff is the only holder of a copyright certificate in and to the Work.

66.    Without Henson's authorization the Defendants licensed, reproduced, distributed, and publicly performed the Work.

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

67.    All Defendants either licensed, reproduced, distributed, and publicly performed the chorus of the Work, or a combination thereof, without Henson's authorization.

68.    Henson did not authorize Defendants' licensing, copying, display, or distribution of the Work.

69.    Defendants knew or should have known that the Work belonged to Henson and that they did not have permission to exploit Henson's work for profit.

70.    Defendants, especially SME, knew or should have known their acts constituted copyright infringement.

71.    As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. section 501. Plaintiff has suffered and will continue to suffer, substantial losses, including but not limited to damage to his business, reputation, and goodwill.

72.    Plaintiff is entitled to recover damages, which include his losses and any and all profits Defendants have made as a result of their wrongful conduct.

73.    Plaintiff is entitled to recover its attorneys' fees and costs of suit as an exception to the American Rule, and as a sanction for the Defendants bad faith conduct of licensing the Work without all required licenses, specifically those necessary for use of all of the underlying works, and or for dragging this case out for mere purposes of harassment.

## SECOND CAUSE OF ACTION

### (Vicarious Copyright Infringement)

### Against SME and Richmond Street Productions, LLC

74.    Plaintiff repeats and incorporates by this reference each and every allegation set forth in paragraphs 1-73, inclusive.

75.    Numerous individuals and entities directly infringed Plaintiff's copyrighted Work.

76.    Defendant SME authorized some if not all of the infringing acts alleged herein.

77. Defendant SME had the authority and ability to control and or stop the infringing acts of the individuals or entities to whom it extended a license to use the Work.

78. SME obtained direct financial benefit from the infringing activities of the individuals and entities who directly infringed Plaintiff's Work, in the form of at minimum its licensing fees.

79. Defendant Richmond Street Productions authorized at a minimum the infringing acts of Nicholas Pauley, John Likens, and Disney, and alleged herein or that will be alleged on amendment.

80. Defendant Richmond Street Productions had the authority and ability to control and or stop the infringing acts of its employees and or agents Nicholas Pauley, John Likens, and Disney.

81. Defendant Richmond Street Productions obtained a direct financial benefit from the infringing activities of Nicholas Pauley, John Likens, and Disney, in the form of at minimum the monies it earned from "Deadpool & Wolverine."

82. The acts and conduct of SME, Richmond Street Productions, and Defendants, as alleged herein constitutes vicarious copyright infringement.

## PRAYER

WHEREFORE, Plaintiff respectfully requests judgment as follows:

(1) Declaration that (a) Henson is the exclusive owner of the Work; (b) SME does not have an interest in the Work sufficient to confer standing on it to claim ownership of the Work;

(2) That the Court enters judgment against Defendants that they have:

a. Infringed Henson's rights in federally registered copyright under 17 U.S.C. § 501,

b. Otherwise injured the business reputation and business of Henson by Defendants acts and conduct set forth in this complaint.

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

(3)     That the Court enjoin Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation from licensing, copying, performing, posting, or making any other infringing use or distribution of the Work;

(4)     The Court order Defendants to pay Plaintiff's actual damages as follows:

a.   Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b)

(5)     That the Court Order Defendants to pay Plaintiff both the costs of this action and the reasonable attorney's fees incurred by it in prosecution of this action as a sanction pursuant to applicable acceptations to the American Rule;

(6)     That the Court grant to Plaintiff such other and additional relief as is just and proper.

DATED: June 26, 2026                              DOBBINS LAW

_____
Brittney R. Dobbins, esq.
Attorney for Darrin Henson

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**